UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET HOOVER, as Personal
Representative for the estate of
MICHAEL SOMMERS, deceased,

        Plaintiff,

vs.

        Case No. 04-CV-70654

        HON. GEORGE CARAM STEEH

OFC. SCOTT ISAACSON,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT ISAACSON'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Before the court in this 42 U.S.C. § 1983/gross negligence case stemming from the fatal shooting of plaintiff's decedent, Michael Sommers, is City of Warren Police Officer Scott Isaacson's motion for summary judgment. Because questions of material fact exist, the court cannot rule as to whether qualified immunity should bar the federal claims against Isaacson, and cannot determine as a matter of law whether his use of force was grossly negligent under state law. Accordingly, defendant's motion is denied as set forth below.

### BACKGROUND

On July 22, 2003, beginning about 5:27 p.m., Warren Police Officer Scott Isaacson ("Isaacson" or defendant), pursued plaintiffs' decedent, Michael Sommers ("Sommers"), east on 12 Mile Road past Van Dyke into a Warren residential

neighborhood following Sommers' illegal right turn onto eastbound 12 Mile from Mound Road.  Soon after entering the neighborhood, the minivan struck a curb, after which it came to a stop with both of its left wheels on the easement between the sidewalk and curb and with a front driver's side flat tire and bent rim.  At this point, Isaacson approached the driver's window of the minivan with his weapon drawn, ordering Sommers to stop and exit the vehicle.  Isaacson has testified that Sommers ignored his orders, reached toward the center floorboard area of the minivan, and proceeded to drive away.  Isaacson stated at his deposition that he ran along with the vehicle as it began to move, ordering Sommers to stop, and that he watched Sommers move the steering wheel in his direction.  Isaacson then fired his weapon toward but did not hit Sommers.  It was later determined that the round hit the flattened left front tire.

     About this time, an additional two man patrol car had arrived, pursuant to Isaacson's earlier call for backup.  Officers Bonacorsi and Kulhanek joined Isaacson on foot alongside the vehicle.  Kulhanek testified at deposition that he was at the front passenger door when Isaacson fired the first, single shot.  After that shot was fired, Sommers continued driving the disabled minivan, heading westbound on Harder, a residential Warren street.  At this point, there were a total of three patrol cars in the immediate area: Isaacson's car, the Kulhanek/Bonacorsi vehicle driven by Officer Kulhanek[1], and a patrol car carrying Officers Kijewski and Booms.  Sommers traveled down Harder approximately three blocks, until it reached its end at Longview.  Sommers

---

[1] It appears that Officer Bonacorsi was riding in the backseat of Officer Isaacson's car at this point in the pursuit.

turned the minivan to the north on Longview, at which point the vehicle came to a stop in the center of the street.

All three police vehicles pursued Sommers down Harder. When they reached Sommers' minivan, Officer Kijewski pulled his car immediately next to the driver's side door of the minivan, blocking that door as an exit for Sommers. Officer Kulhanek pulled his car up to the back of the van, and Isaacson parked his car somewhere to the left of Officer Kijewski's vehicle.

According to plaintiff's response brief, Officer Kijewski approached the driver's side of the van, ordering Sommers to exit. Sommers did not respond, and Kijewski broke out the driver's side window with his baton. Kijewski testified that Sommers bent toward the center console area, causing Kijewski to draw his firearm. Kijewski stated that he put the weapon away when he saw Sommers pick up a crack pipe, rather than a weapon, from the console area. Kijewski then tried to hit the crack pipe out of Sommers' hands with his baton.

Officer Kulhanek pulled up behind the van, and approached on the passenger side with his gun drawn. He could not open the passenger door. He smashed out that window with his baton, and also attempted to knock the pipe from Sommers' hand with a baton. Officer Bonacorsi came around the front of the van, joining Kulhanek on the passenger side.

About this time, Isaacson testified, he was in the front of the van, first at the driver's side front fender, then at the passenger front corner. Isaacson has testified that when the van began to move forward again, he believed he and the other officers were in danger. Isaacson fired four shots through the passenger side window into Sommers,

3

killing him.  The general sequence of events in this case is not in dispute, and is confirmed by defendant's proffer of three videotapes shot from each of the police cruisers at the scene.  However, particularized facts and circumstances surrounding the final shots are disputed by the parties, as discussed in the analysis section, below.

Plaintiff's complaint was filed on February 20, 2004 by the personal representatives of his estate against Officer Isaacson, the City of Warren, and the Warren Chief of Police under 42 U.S.C. § 1983 for violations of the Fourth Amendment and under state law for gross negligence.  The parties stipulated to the dismissal of all claims against the City of Warren and the Police Chief, and before the court now is defendant Isaacson's motion for summary judgment as to all remaining claims.  The parties have submitted written arguments and exhibits, including police vehicle video tapes offered by defendant, and the court heard oral argument on April 28, 2005, after which it allowed and considered supplemental argument and authorities to be filed by the parties.  The court's consideration of these arguments and determination on the motion is set forth below.

## STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored

procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248,

5

252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

ANALYSIS

1.  Qualified Immunity as Bar to 42 U.S.C. § 1983 Claim

Plaintiffs' count under 42 U.S.C. § 1983 claims that the force used by Isaacson against Sommers violated the Fourth Amendment, to which Isaacson asserts he is entitled to the protection of qualified immunity.  On a claim of qualified immunity made by an officer, this court has been instructed by the Supreme Court, in Saucier v. Katz, 533 U.S. 194, 201 (2001), to decide first whether the facts, taken in a light most favorable to the plaintiff, show a violation of a constitutional right.  If the answer to that question is yes, qualified immunity may present a bar to liability for the officer if it would not have been clear to a reasonable officer in his position that his conduct was unlawful.  Id., at 201-202.

a.  Whether Defendant Violated a Constitutional Right

As outlined above, the first question in this context is whether the alleged facts, considered in a light most favorable to plaintiff, show that the officer's conduct violated a constitutional right.  Id.  The parties agree that "claims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard."  Brosseau v. Haugen, 125 S.Ct. 596, 598 (2004) (citing Graham v. Connor, 490 U.S. 386 (1989)).  The use of deadly force to apprehend Sommers is a seizure, subject to the Fourth Amendment's requirement of reasonableness.  Dudley v. Eden, 260 F.3d 722 (6th Cir. 2001) (citing Tennessee v. Garner, 471 U.S. 1, 7-8 (1985)).  The Supreme Court has emphasized that a decision concerning the reasonableness of the actions examined

requires an examination of the "totality of the circumstances" and "careful attention to the facts and circumstances of each particular case." Graham, 490 U.S. at 396.

In the Sixth Circuit case of Smith v. Freland, 954 F.2d 343 (1992), an unarmed motorist committed a minor traffic violation, then led a police officer on a chase, moving at speeds up to ninety miles per hour. After the motorist was cornered by the officer, he rammed the police car, then backed up and got around the cruiser. The officer then pulled out his weapon and fired one shot at the motorist, killing him. Although the officer was not in personal danger at the moment he shot the motorist, the Sixth Circuit held that the officer's actions were reasonable under the circumstances, where events were unfolding quickly and allowing the motorist to continue would have posed the threat of injury to others, in particular officers at the end of the street. Smith, 954 F.2d at 346-47.

Unlike in the Smith case, there is no evidence in the instant case that there were pedestrians or vehicles, other than the officers at the sides of the vehicle and the officers' cars, in the immediate vicinity or in the path of the plaintiff's van. Also, unlike Smith, there was no ramming of another vehicle, and as plaintiff argues, no evidence that plaintiff ever "did anything except try to escape." Plaintiff's Supplemental Memorandum, p. 8. There has been no demonstration by defendant that any specified individual was at risk, other than the offer of Officers Isaacson's and Bonacorsi's testimony that plaintiff was turning the van in the officers' direction. However, plaintiff points to other testimony of Officer Isaacson in which he agreed he was able to "step back out of the way" of the van at the critical juncture (i.e., at Sommers' final attempt to flee). See Isaacson deposition, p. 71. Moreover, the van was disabled to a certain extent, as at least one tire was entirely flat. Therefore, the court finds that in a light

7

most favorable to the non-movant, defendant may have violated plaintiff's constitutional right to be free from deadly force.

b. Reasonableness of Actions

The next question for this court is whether it would have been clear to a reasonable officer in Isaacson's shoes that the use of deadly force against the plaintiff violated the Fourth Amendment. This question requires an examination of the state of the law on July 22, 2003, the date of the events in question. "In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." Walton v. City of Southfield, 995 F.2d 1331 (6th Cir. 1993).

The Brosseau decision, relied upon by defendant, was issued after the events giving rise to this case had transpired. Therefore, knowledge of the decision in that case cannot be imputed to plaintiff. However, caselaw discussed therein, such as Tennessee v. Garner, 471 U.S. 1 (1985), does reflect the state of the law at that time, and shows certain actions by officers, in the context of the Fourth Amendment, that were found not to be "clearly established" violations of the law. For example, the Brosseau case examined the Smith case, discussed above, the case of Cole v. Bone, 993 F.2d 1328 (8th Cir. 1993), in which it was held that an officer "had probable cause to believe that the truck posed an imminent threat of serious physical harm to innocent motorists as well as to the officers themselves", and, on the other hand, Estate of Starks v. Enyart, 5 F.3d 230 (7th Cir. 1993), where a "fleeing suspect's failure to brake when an officer suddenly stepped in front of his just-started car was not a sufficiently grave threat

to justify the use of deadly force." Brosseau, 125 S.Ct. at 600 (citing Starks, 5 F.3d at 234).

As discussed in the recent Sixth Circuit case of Sample v. Bailey, 2005 WL 1283517 (6th Cir. May 9, 2005), "it has been clearly established in this circuit for the last twenty years that a criminal suspect 'ha[s] a right not to be shot unless he [is] perceived to pose a threat to the pursuing officers or to others during flight.'" Id. at *9, quoting Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir. 1988). The question this case turns on, then, is whether or not the defendant *could have reasonably believed* that Sommers' attempt to escape posed a threat of death or serious physical injury to himself or others.

After considering the evidence offered in the case to date, it is the court's determination that it cannot rule on the question of qualified immunity as a matter of law. In a defendant's motion for summary judgment based on qualified immunity, the plaintiff is required to identify a clearly established right that was violated, and establish that a reasonable officer in the defendant's situation should have known that deadly force violated that right. Johnson v. Estate of Laccheo, 935 F.2d 109, 111 (6th Cir. 1991). However, where the question of qualified immunity "is completely dependent upon which view of the facts is accepted by the jury," a district court cannot grant qualified immunity to an officer on a claim such as this. Brandenburg v. Cureton, 882 F.2d 211, 215-16 (6th Cir. 1989). See also Sova v. City of Mt. Pleasant, 142 F.3d 898 (6th Cir. 1998).

In the instant case, defendant has testified that he was afraid of being struck by the vehicle (Isaacson deposition, p. 106), and about his general fear for his and other officers' safety at the time of the fatal shooting (Id., pp. 69-72). However, plaintiff points

9

out that defendant shot Sommers through the side passenger window, rather than the front windshield, and that he in fact admitted that he did not fire the shots until the vehicle was moving past him.  (Id., p. 73.)  Indeed, Isaacson concedes he was at the side of the vehicle at the time of the shooting (Id., p. 71), and did testify at deposition that he fired the shots "knowing the guy just tried to run me over."  Id.  As plaintiff emphasizes, this testimony may indicate, to some extent, a retaliatory motive on the part of Isaacson.  Furthermore, the court's repeated viewing of the videotapes confirms that Sommers' vehicle was significantly disabled, and that no specified individual was at an immediate risk of being hit by the vehicle at the time of the fatal shooting.

Finally, the court notes that witnesses at the scene have offered varying depictions of the events.  See Larsen statement, deposition, p. 14, Pawluszka deposition, p. 24.  The court further notes it is not clear from the evidence, including the videotapes offered by defendant, exactly how disabled the van appeared to be at the time, what Sommers was doing inside the van, or whether in fact Sommers threatened to turn the van sharply in the officers' direction prior to the shooting, as asserted by defendant, and as testified to by defendant and Officer Bonacorsi.  Thus, it is the court's determination that whether an officer in defendant's position would have found the use of deadly force reasonable under the circumstances depends on certain findings of fact which are in dispute in this case.  Because defendant's entitlement to qualified immunity turns on the events unfolding in those moments before the fatal gunshots, which require the careful assessment of a fact finder, this is a case where disputed material facts require the court to deny defendant's motion for summary judgment on the basis of qualified immunity.

2.  Gross Negligence Claim

Under Mich. Comp. Laws Ann. § 691.1407, an employee of a governmental agency has immunity for tort liability for injuries caused while in the course of employment.  Pursuant to § 691.1407(2), however, such an employee is liable for his "gross negligence that is the proximate cause of the injury or damage."  See also Cebreco v. Music Hall Ctr. for the Performing Arts, Inc., 219 Mich.App. 353 (1996).  This is called the "gross negligence exception" to liability.  "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." § 691.1407(7)(a).

Because the court agrees with plaintiff that plaintiff has come forward with evidence that defendant's shots were the proximate cause of Sommers' death, and because the court has found that a question of material fact exists as to whether an officer in defendant's situation would find the application of deadly force reasonable under the circumstances presented here, the court finds that there is also a question of material fact as to whether defendant's acts were grossly negligent under Michigan law.  Defendant's motion for summary judgment will be denied as to this claim as well.

CONCLUSION

11

For the reasons given above, the court hereby DENIES defendant's motion for summary judgment. The parties shall contact the deputy clerk concerning further dates in this matter.

IT IS SO ORDERED.

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: July 15, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on July 15, 2005, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk